IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 13 |
| HARRY JOSEPH WOLTMAN and | * | |
| LILLIAN ELIZABETH WOLTMAN, | * | |
| (Deceased), | * | CASE NO. 1:07-bk-01647MDF |
|     Debtors | * | |
| | * | |
| HARRY JOSEPH WOLTMAN and | * | |
| LILLIAN ELIZABETH WOLTMAN, | * | |
| (Deceased), | * | |
|     Movants | * | |
| | * | |
| v. | * | |
| | * | |
| PNC BANK, | * | |
|     Respondent | * | |

## OPINION

### Procedural and Factual History

On May 30, 2007, Harry and Lillian Woltman ("Debtors") filed the above-captioned Chapter 13 case.[1] In their schedule of real property, they listed their residence at 35 Rexford Road, Hummelstown, Pennsylvania at a value of $121,500.00 subject to a "second mortgage" held by PNC Bank ("PNC") in the amount of $78,300.00. On their schedule of exemptions, Debtors claimed exemptions in their residence of $40,400.00 under § 522(d)(1) and $2,140.00 under § 522(d)(5). Debtors listed the PNC claim on their schedule of secured creditors as well as the Dauphin County Tax Claim Bureau ("Dauphin County"), which they listed as holding a secured claim of $3,000.00. Debtors' petition did not reference any other liens against the real estate and no amendments to the schedule of secured claims was filed prior to confirmation. Although Debtors reported only one PNC lien in their schedules, they included both a first

---

[1]Lillian Woltman passed away on May 24, 2008.

second mortgage to PNC in their original plan (the "Plan"), proposing to make current payments outside the Plan and to pay arrearages through the Plan. Debtors' Plan was confirmed on August 17, 2007.

On February 14, 2008, PNC filed a motion for relief from the stay to enable it to exercise its state rights against the residence pursuant to a judgment lien in the principal amount of $28,218.16.[2] In their answer to PNC's motion, Debtors asserted that PNC's judgment lien was adequately protected by equity in the residence. However, they asserted that they would amend their Plan to provide for PNC's judgment lien. On March 27, 2008, Debtors duly filed a First Amended Chapter 13 Plan ("the Amended Plan") in which they proposed to pay PNC's judgment through refinancing of Debtors' residence. In the Amended Plan Debtors specifically referred to the debt secured by the second lien as a "judgment," rather than as a "second mortgage" as referred to in the Plan. In reliance on this provision, PNC withdrew its motion for relief from stay on April 14, 2008. The Chapter 13 Trustee ("Trustee") filed an objection to the Amended Plan on the basis that it failed to set a deadline for refinancing to occur and did not provide a base amount for the plan. Debtors then filed a Second Amended Chapter 13 Plan ("Second Amended Plan"), which addressed both of the concerns of the Trustee. An order was entered on May 27, 2008 granting Debtors' motion to modify the confirmed Plan.

On September 3, 2008, Debtors filed a motion to avoid PNC's judgment lien under § 522(f), alleging that it impaired their right to claim an exemption in the residence under

---

[2]The lien arose under state law when, on August 30, 2004, PNC confessed and obtained judgment on a Business Banking Line of Credit Agreement that Debtors had executed on behalf of themselves and their corporation, Pure Water Company, Inc.

2

§ 522(d). PNC objected to the motion on the grounds that Debtors were bound by the provisions of the Second Amended Plan, which required Debtors to pay the lien in full.

A hearing was held on the lien avoidance motion on September 29, 2008. At the hearing, Debtors stated that they were seeking to avoid the lien because they recently discovered that the lien was a judgment subject to avoidance to the extent that the lien impaired Debtors' exemption in their residence. PNC responded that Debtors were barred by the principles of *res judicata* because they failed to raise the lien avoidance issue prior to the confirmation of both the Plan and the Second Amended Plan.[3] The Court took the matter under advisement, and it is ready for decision.[4]

## Discussion

The issue to be decided is whether Debtors are barred by the doctrine of *res judicata* from seeking to avoid a judgment lien that may impair Debtors' exemption in their residence after confirmation of their chapter 13 plan.

Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C § 1327(a). Although this provision typically is employed as a shield by a debtor to bar a creditor from taking

---

[3] PNC also asserted that the value of the residence is sufficient to enable the judgment lien to be paid without impairing Debtors' exemptions. Debtors dispute PNC's valuation. The valuation issue was left unresolved at the hearing because the issue to be decided herein – whether the statute permits Debtors to modify their confirmed plan – must be decided first.

[4] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(K) and (O). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052 which is made applicable to contested matters by Fed. R. Bankr. P. 9016.

action against the debtor in contravention of the terms of a confirmed plan, a debtor is equally bound by the confirmation order. Confirmation of a plan is "res judicata as to all issues decided or which could have been decided at the hearing on confirmation." *In re Szostek,* 886 F.2d 1405, 1408 (3d Cir. 1989); *Ruskin v. DaimlerChrysler Services N. Am., LLC (In re Adkins)*, 425 F.3d 296, 302 (6th Cir. 2005); *In re Cameron*, 274 .B.R. 457,460 (Bankr. N.D. Tex. 2002). *See also In re Hibble*, 371 B.R. 730, 734 (Bankr. E.D. Pa. 2007). Even if the Court accepts Debtors representation that they were unaware that the second position PNC lien, which they listed on their schedules as a second mortgage, was actually a judgment lien, Debtors would not be entitled to relief.[5] As the Court of Appeals noted in a case on similar facts, *res judicata* will be applied unless newly discovered evidence either was fraudulently concealed or could not have been discovered with due diligence. *In re Layo*, 460 F.3d 289, 292-93 (2d Cir. 2006) (citing *Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991). Reviewing documents that support a secured claim is the most basic type of due diligence. Debtors simply failed to adequately investigate PNC's lien prior to confirmation of both the Plan and the Second Amended Plan. Accordingly, the motion to avoid the lien must be denied. An appropriate order will be entered.

By the Court,

*[signature: Mary D. France]*
Bankruptcy Judge

Date: November 18, 2008

*This document is electronically signed and filed on the same date.*

---

[5]It is difficult for the Court to understand how Debtors could only discover the nature of the judgment lien after the Second Amended Plan was approved. Debtors' Plan referred to the second position lien as a "judgment" and PNC's motion for relief, filed before the Second Amended Plan was approved, clearly explained that the lien arose from the entry of judgment on a note securing a line of credit for Debtors' business.

4